IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Jose Ayala § | |
| *Plaintiff* § | |
| v. § | |
| § | |
| Trader Joe's Company § | CIVIL ACTION NO. _____ |
| § | |
| *Defendant.* § | |
| § | JURY TRIAL DEMANDED |
| § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Jose Ayala, hereinafter called Plaintiff, complaining of and about Trader Joe's Company, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### I. INTRODUCTION

1. This is an action under The Family Medical Leave Act for Defendant's unlawful employment practices resulting in interference and retaliation.

### II. PARTIES

2. Plaintiff, Jose Ayala is an individual who resides in Harris County Texas.

3. Defendant Trader Joe's Company is a California company conducting business in Texas. Defendant is an employer within the meaning of the applicable statutes and employs more than

fifteen regular employees. Defendant can be served through its register agent, Paracorp Incorporated at 2804 Gateway Oaks Dr. #100, Sacramento, CA 95833.

### III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 as it arises under federal law, specifically The Family Medical Leave Act. 29 U.S.C. § 2601 *et seq*.

5. This Court has jurisdiction over Defendant because Defendant has purposefully availed itself to the privilege of conducting business in the state of Texas. Defendant conducts business in Texas and has continuous and systematic contacts with the state of Texas sufficient to establish general jurisdiction over said Defendant.

6. The Southern District of Texas is the proper venue for this matter pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this district. Venue is also proper in this district because Defendant operated within this judicial district at all relevant times to the events giving rise to this suit.

### IV. FACTS

7. The Plaintiff is Joes Ayala, a resident of Harris County, Texas, and was an employee of the Defendant at the Defendant's South Voss Road, Houston, Texas location at all times material to this Complaint.

8. The Defendant is Trader Joe's Company is a company doing business at 1440 South Voss Road Houston, Texas 77057. Defendant is an "employer" for the purposes of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), and the FMLA as amended by the Families First Coronavirus Response Act ("FFCRA").

9. Plaintiff was a full-time employee of the Defendant from on or about October 28, 2019, until his wrongful termination on or about May 5, 2020. At the time of separation from employment Plaintiff's job title was "crew member."

10. On or about March 2, 2020, Defendant amended its "Leave of Absence" to cover COVID-19 related self-isolation and symptoms (in line with the protections afforded by the FFCRA). Pursuant to its own policy, employees affected by COVID-19 were eligible for up to fourteen (14) paid days off."

11. Although Defendant employees more than 500 people, it's assertion of adherence to the FFCRA's provisions and policy changes that align with the FFCRA's guidance prohibit Defendant from denying the coverage to its employees. Defendant is bound by the FFCRA by way of estoppel.

12. On or about February 27, 2020, Defendant began conducting "Crew Member Wellness checks.

13. The manner in which the wellness checks were conducted, involved a "Mate" (Defendant's name for manager), who would walk around to each Crew Member, after he/she clocked in for their shift and verbally ask each employee if the/she was experiencing any symptoms of COVID-19. "Each Crew Member was asked a "few straightforward questions" by the manager on duty.

14. Plaintiff was verbally asked during each of the wellness checks, "how do you feel?", are you experiencing any of the following symptoms: fever, cough, headaches, sore throat". Plaintiff did not have any symptoms, and each time he answered "no."

15. On or around Monday April 27, 2020, although he did not have any symptoms, Plaintiff decided to get a precautionary COVID-19 test during his off day. He was advised that he would receive his results in three to ten business days. On Tuesday April 28, 2020 Plaintiff was not scheduled to work.

16. Upon his return to work on April 29th, Plaintiff still did not have any COVID-19 symptoms. During the two question wellness check, a "Mate" again asked Plaintiff: "how do you feel?", are you experiencing any of the following symptoms: fever, cough, headaches, sore throat". Plaintiff again answered "no".

17. On or around April 30, 2020, Defendant implemented a New Safety Guideline.

18. To implement this new guideline, Defendant had each crew member call a fellow crew member from his/her work station, on a rotating basis, to meet with Don (A Mate/Assistant Manager) to read and acknowledge the new guideline.  Individual copies of the New Safety Guideline were not produced to each crew member.

19. While reading the newly implemented guideline, Plaintiff noticed that the guideline was more in-depth than the two questions asked during the verbal wellness check Defendant had performed at the beginning of each shift.

20.  When done reading the new guideline, Plaintiff was told to acknowledge the new safety guideline by locating and signing his name on a signature sheet which was separate from the guideline.

21. The new safety guideline, again listed symptoms such as: fever, cough, headache, sore throat, all of which Plaintiff was not experiencing. However, the last sentence said if an employee had been tested for COVID-19, they are to "stay at home while waiting for results".

22. After Plaintiff learned for the first time that crew members should stay home if he/she was awaiting COVID-19 test results,  Plaintiff  disclosed to Dustin Fuller (Captain), that he did not have any symptoms, but he did take a COVID-19 test out of precaution and Plaintiff was sent home.

23. On or Around May 1, 2020, Dustin Fuller, contacted Plaintiff by text message on his personal phone stating: "I just wanted to check in on y'all. How's it going." At that time Plaintiff, informed

him that he had not gotten his results back yet. Shortly after, Plaintiff got a phone call with his results and texted Dustin Fuller back saying, "unfortunately it came back positive".

24. Plaintiff informed Dustin Fuller that he was asked by medical professionals to start quarantine on May 1, 2020 for the next fourteen days. After that time Plaintiff would get another COVID-19 test on May 15, 2020. Dustin Fuller responded, "Ok. Let me find out what we need to do next."

25. On or around May 3, 2020, just three days into Plaintiff's fourteen-day quarantine, Dustin Fuller, sent a text message to Plaintiff indicating that he "just wanted to check in on y'all. How are you feeling?" Plaintiff responded, "we're doing well. We feel fine. How's everything at [the] store?"

26. On or around May 4, 2020, Dustin Fuller sent Plaintiff another text message. In that message he told Plaintiff, "Hey, Liz wanted me to ask you to write down a statement. About the wellness checks and on Thursday when you told me you had been tested." Dustin asked Plaintiff to send the statement to his personal email address.

27. On or around May 4, 2020, Plaintiff emailed his statement to management. In that statement, that he informed that he had been provided a new guideline on April 30, 2020. Upon reading the guideline he noticed the same symptoms were listed and that the last sentence stated "if an employee has been tested for COVID-19 they are to stay at home while waiting for results." After learning from the new guideline that he should be home, it was at that time that he brought to the Captain's attention, that he had been tested. Prior to April 30, 2020 Plaintiff was not advised to stay home if he did not have any symptoms, and he was never asked if he had taken a test.

28. After reporting that he had tested positive for COVID-19, on or around May 5, 2020 Plaintiff was terminated from his job. On that same day he contacted Human Resources via email.

29. In his email to Maricel Camiling, Plaintiff stated that he was advised by Dustin Fuller, that [he] was fired for testing positive for COVID-19. Plaintiff again informed that prior to April 30, 2020, he was never told that he should stay home if he had taken a COVID-19 test.

30. On or around May 5, 2020 Diane Carroll, Sr. Human Resources Generalists for the region, responded to Plaintiff's email.

31. In her email, Diane Carroll alleged that Plaintiff was terminated because "[he] did not respond in a truthful way when [he] was asked [his] questions during a Wellness Check."

32. In response to Diane Carroll's email, Plaintiff asked her to "specify which questions [he] did not respond [to] in a truthful manner? He asserts that he was never asked if he had been tested for COVID-19, but he and all crew members were randomly approached, and asked if they were experienced any symptoms, to which he again confirmed he did not have any symptoms.

33. On or around May 8, 2020, Plaintiff asked Diane Carroll for a copy of his termination letter, as well as the questionnaire he acknowledged on April 30, 2020. Diane Carroll responded stating "when a crew member answers no to the questions, the mate does not complete the Wellness Check

form. However, when your when your mate had you review the update in the Navigation Manual you did sign off on the Log that you read it on 4/30/2020. It was later that same day; you informed your Captain that you had been tested on 4/27/2020 for COVID-19".

34. Within three days of Plaintiff's notice to management of his positive COVID-19 test, he was terminated. At no time did Defendant initiate discussion with Plaintiff regarding utilizing the FMLA to cover his absence, as it is required to do pursuant to the FMLA. Defendant failed to provide Plaintiff with notice of his FMLA eligibility for serious health conditions and a copy of the company's FMLA notice polices. Defendant is a covered employer, and Plaintiff a qualified employee, under the FMLA, and therefore his need for time off work in excess of three days to attend to his serious medical condition entitled Plaintiff to protection of his job under the FMLA. Defendant's actions when terminating Plaintiff were in direct violation of the FMLA.

35. Furthermore, as it applies to Plaintiff, Defendant failed to adhere to its own policy it set forth in response to the COVID-19 pandemic, a policy which mirrors the FFCRA, Division E, § 5101 *et seq*. Defendant is estopped from asserting that it was not a covered employer under the FFCRA, as it represented to its employees that they were entitled to the same protections as afforded by the FFCRA.

36. Finally, Defendant's actions were knowing, intentional, willful, wanton, and in direct violation of Plaintiff's federally protected rights pursuant to the FMLA and the FFCRA, entitling Plaintiff to liquidated damages.

## V. CAUSE OF ACTION NO. 1:
## INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

37. Plaintiff incorporates all allegations above.

38. The Family Medical Leave Act makes it unlawful for any employer to interfere, restrain or deny the exercise of or the attempt to exercise, any right provided under [the] subchapter. 29 U.S.C § 2615(a)(1)

39. Defendant is a covered employer, and Plaintiff worked the required 1,250 hours in the previous 12 months and is therefore a qualified employee, under the FMLA.

40.. Plaintiff gave Defendant notice of his COVID-19 test results, and informed Defendant of the ordered fourteen day Quarantine.

41. Therefore his need for time off work in excess of three days to attend to his serious medical condition entitled Plaintiff to protection of her job under the FMLA. Defendant's actions when terminating Plaintiff were in direct violation of the FMLA.

## VI. CAUSE OF ACTION NO. 3:
## RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

42. Plaintiff incorporates the allegations above.

43. The Family Medical Leave Act makes it unlawful for any employer to interfere, restrain or deny the exercise of or the attempt to exercise, any right provided under [the] subchapter. 29 U.S.C § 2615(a)(2)

44. Plaintiff engaged in conduct protected under U.S.C § 2615(a)(2).

44. Plaintiff was subjected to an adverse employment action at the time, and after, the protected conduct occurred.

## VIII. RESPONDEAT SUPERIOR AND RATIFICATION

46. Whenever in this complaint it is alleged that the Defendant, did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## IX. DAMAGES

47. As a result of Defendant's unlawful conduct, Plaintiffs have suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future. Plaintiffs have also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

## X. ATTORNEY'S FEE AND COSTS

48. Plaintiffs are entitled to an award of attorney's fees and costs under 29 U.S.C § 2617.

## XI JURY DEMAND

49. Plaintiffs request a trial by jury on all issues that can be tried to a jury.

## XII. PRAYER

WHEREFORE, premises considered, Plaintiffs pray that the Defendant be cited to appear and answer herein, and that upon a final trial, judgment be entered for the Plaintiffs against Defendant for:

    a. actual and consequential damages, including, but not limited to back pay (wages and benefits);

    b. Liquidated damages,

    c. Reasonable attorney's fees, with conditional awards in the event of appeal;

    d. Pre-judgment interest at the highest rate permitted by law;

    e. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

    g. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

    h. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

_/s/ Allecia L. Pottinger_

Allecia Lindsey Pottinger
Texas Bar No. 0079351
Allecia Lindsey Pottinger Law Firm, PLLC.
6300 West Loop South, Suite 610
Bellaire, Texas 77401
Tel: (832) 930-0997
Fax: (832) 200-1997

**ATTORNEY FOR PLAINTIFF**