**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOSE AYALA,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-00408** |
| | § | |
| **TRADER JOE'S COMPANY,** | § | |
| | § | |
| **DEFENDANT.** | § | |

**DEFENDANT TRADER JOE'S COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

Dated: June 8, 2022

*Of Counsel:*

Analiza Rodriguez
State Bar No. 24110290
S.D. Tex. ID No. 24110290
anrodriguez@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.652.4736 (Telephone)
713.583.0023 (Facsimile)

Respectfully submitted,

/s/ Kelley Edwards
Kelley Edwards (*Attorney-in-Charge*)
State Bar No. 24041775
S.D. Tex. ID No. 560755
kedwards@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

**ATTORNEYS FOR DEFENDANT**
**TRADER JOE'S COMPANY**

**TABLE OF CONTENTS**

**PAGE**

I. NATURE AND STAGE OF THE PROCEEDING.............................................. 1

II. ISSUES TO BE RULED UPON BY THE COURT............................................ 1

    1. Whether Trader Joe's Is Entitled To Summary Judgment On Ayala's FMLA Interference Claim When The Undisputed Evidence Shows That Ayala Was Not Entitled To Leave, And Ayala Did Not Provide Proper Notice To Trader Joe's Of His Intention To Take Leave ..................................... 1

    2. Whether Trader Joe's Is Entitled To Summary Judgment On Ayala's FMLA Retaliation Claim When There Is No Evidence That Trader Joe's Terminated Ayala Because He Requested FMLA Leave, And The Undisputed Evidence Demonstrates Instead That Trader Joe's Terminated Ayala Because Of Dishonesty ................................................... 1

III. LEGAL STANDARD.............................................................................. 1

IV. INTRODUCTION AND SUMMARY OF THE ARGUMENT ...................................... 2

V. STATEMENT OF FACTS ............................................................................ 3

    A. Ayala's Employment With Trader Joe's................................................ 3

    B. Trader Joe's Implemented Crew Member Wellness Checks To Mitigate The Risk Of Covid-19 To Its Crew Members And Customers ............................ 4

    C. Ayala Took A Covid-19 Test After Close Contact Exposure To Someone With Covid-19 And Returned To Work In Violation Of The Wellness Check ................................................................................................ 5

    D. Ayala Confessed To Captain Dustin Fuller That He Was Awaiting Covid-19 Test Results ...................................................................................... 6

    E. On May 1, 2020, Ayala Test Positive For Covid-19 ............................. 7

    F. Ayala's Employment Is Terminated For Dishonesty............................ 7

VI. ARGUMENT & AUTHORITIES ................................................................... 8

    A. Ayala's FMLA Interference Claim Fails As A Matter Of Law............................. 8

        1. Ayala Was Not Entitled To FMLA Leave.................................. 9

        2. There Is No Evidence Ayala Gave Proper Notice Of His Intent To Take FMLA Leave.......................................................... 9

    B. Trader Joe's Is Entitled To Summary Judgment On Ayala's FMLA Retaliation Claim ...................................................................................... 12

        1. Ayala Cannot Establish A Prima Facie Case Of FMLA Retaliation ....... 12

            a. Ayala Did Not Engage In Activity Protected Under The FMLA .................................................................................. 12

**TABLE OF CONTENTS**

**PAGE**

    b.      Ayala Lacks Evidence Of A Causal Connection Between Any Protected Activity And His Termination ............................. 13

    2.     Trader Joe's Terminated Ayala's Employment For A Legitimate, Non-Discriminatory, Non-Retaliatory Reason ........................................ 15

    3.     Ayala Has No Evidence That Trader Joe's Stated Reason For Terminating His Employment Was A Pretext For FMLA Retaliation ................................................................................................... 15

VII.    CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

**Cases** .......................................................................................................... **Page(s)**

*Acker v. Gen. Motors, L.L.C.*,
    853 F.3d 784 (5th Cir. 2017) ...................................................................8, 10, 11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................................2

*Bauer v. Albermarle Corp.*,
    169 F. 3d 962 (5th Cir. 1999) ...............................................................................17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................2

*Chaffin v. John H. Carter Co., Inc.*,
    179 F.3d 316 (5th Cir. 1999) .................................................................................8

*Coleman v. FFE Transp. Servs., Inc.*,
    2013 WL 1914932 (N.D. Tex. May 9, 2013) ........................................................16

*De Anda v. St. Joseph's Hosp.*,
    671 F.2d 850 (5th Cir. 1982) ...............................................................................18

*DeVoss v. Sw. Airlines Co.*,
    Civ. Action No. 3:16-CV-2277-D, 2017 WL 5256806 at *3 (N.D. Tex. Nov.
    13, 2017)(*aff'd* 903 F.3d 487 (5th Cir. 2018).....................................................8, 9

*Duplantis v. Shell Offshore, Inc.*,
    948 F.2d 187 (5th Cir. 1991) ...............................................................................2

*Grubb v. Southwest Airlines*,
    296 F. App'x 383 (5th Cir. 2008) .........................................................................12

*Hunt v. Rapides Healthcare Sys.*,
    LLC, 277 F.3d 757 (5th Cir. 2001)..............................................................8, 12, 13

*Jarjoura v. Ericsson, Inc.*,
    266 F.Supp.2d 519 (N.D. Tex. 2003) ...................................................................12

*Jones v. La. Dep't of Health & Hosps.*,
    471 F. App'x 344 (5th Cir. 2012) .........................................................................2

*Lanier v. University of Texas Southwestern Medical Center*,
    527 Fed. Appx. 312 (2013)...................................................................................13

*Little v. Republic Ref. Co.*,
    924 F.2d 93 (5th Cir. 1991) .................................................................................18

**TABLE OF AUTHORITIES**
(CONTINUED)

*Lyons v. Katy Indep. Sch. Dist.*,
    964 F.3d 298 (5th Cir. 2020) ..................................................................................2

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..................................................................................................2

*Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*,
    446 F.3d 574 (5th Cir. 2006) .............................................................................12, 13

*Mayberry v. Mundy Cont. Maint., Inc.*,
    No. CIV.A. H-03-5221, 2005 WL 1965956 (S.D. Tex. Aug. 16, 2005), aff'd,
    197 F. App'x 314 (5th Cir. 2006)...........................................................................15

*Mayberry v. Vought Aircraft Co.*,
    55 F.3d 1086 (5th Cir. 1995) ..................................................................................18

*McCray v. DPC Indus., Inc.*,
    942 F. Supp. 288 (E.D. Tex. 1996).........................................................................15

*McElroy v. PHM Corp.*,
    622 F. App'x 388 (5th Cir. 2015)............................................................................10

*Meinelt v. P.F. Changs China Bistro, Inc.*,
    787 F. Supp. 2d 643 (S.D. Tex. 2011) ....................................................................11

*Price v. Fed. Exp. Corp.*,
    283 F.3d 715 (5th Cir. 2002) ..................................................................................16

*Roberson v. Alltel Info. Servs.*,
    373 F.3d 647 (5th Cir. 2004) ..................................................................................17

*Satterfield v. Wal-Mart Stores, Inc.*,
    135 F.3d 973 (5th Cir. 1998). 29 C...................................................................10, 13

*Seaman v. CSPH, Inc.*,
    179 F.3d 297 (5th Cir. 1999) ..................................................................................10

*Spencer v. Schmidt Elec. Co.*,
    576 Fed. Appx. 442, 451 (5th Cir. 2014).................................................................15

*Stewart v. Metro. Lloyds Ins. Co. of Tex.*,
    No. H- 19-5008, 2020 WL 3452258 (S.D. Tex. June 24, 2020)...............................2

*Strong v. Univ. Health Care Sys.*,
    482 F.3d 802 (5th Cir. 2007) ..................................................................................16

iv.

**TABLE OF AUTHORITIES**
(CONTINUED)

*Tatum v. So. Co. Servs. Inc.*,
    930 F.3d 709 (5th Cir. 2019) ........................................................................................8

*Wallace v. Tex. Tech Univ.*,
    80 F.3d 1042 (5th Cir. 1996) .......................................................................................2

*Wiseman v. New Breed Logistics, Inc.*,
    72 F. Supp. 3d 672 (N.D. Miss. 2014) ........................................................................16

**Statutes**

§ 2612..........................................................................................................................9

Families First Coronavirus Response Act ("FFCRA")....................................................4

Family and Medical Leave Act ("FMLA") ........................................................... *passim*

29 U.S.C. § 2615...........................................................................................................8

**Other Authorities**

9 C.F.R. § 825.302(c)....................................................................................................11

29 C.F.R. § 825 .....................................................................................................9, 10, 11

FED. R. CIV. P. 56.........................................................................................................1

v.

## DEFENDANT TRADER JOE'S COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Trader Joe's Company ("Trader Joe's") files this motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure and respectfully shows the Court the following:

## I.    NATURE AND STAGE OF THE PROCEEDING

Plaintiff Jose Ayala ("Ayala") filed his Original Complaint on February 7, 2021, alleging that his former employer, Trader Joe's, interfered with his rights to leave under the Family and Medical Leave Act ("FMLA"), and retaliated against him for taking protected leave, after he came to work for two days while awaiting test results for COVID-19 in April 2020. Dkt. 1.

The motions deadline is June 8, 2022, discovery closes on June 10, 2022, and docket call is scheduled for November 7, 2022.  Trader Joe's now timely moves for complete summary judgment because Ayala's claims are meritless.

## II.    ISSUES TO BE RULED UPON BY THE COURT

1.    Whether Trader Joe's is entitled to summary judgment on Ayala's FMLA interference claim when the undisputed evidence shows that Ayala was not entitled to leave, and Ayala did not provide proper notice to Trader Joe's of his intention to take leave.

2.    Whether Trader Joe's is entitled to summary judgment on Ayala's FMLA retaliation claim when there is no evidence that Trader Joe's terminated Ayala because he requested FMLA leave, and the undisputed evidence demonstrates instead that Trader Joe's terminated Ayala because of dishonesty.

## III.    LEGAL STANDARD

A court may grant a motion for summary judgment if all of the information before the court shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  When a defendant moves for summary judgment on a plaintiff's causes of action, it need only point to the absence of evidence supporting

1

one or more elements of his claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Lyons v. Katy Indep. Sch. Dist*., 964 F.3d 298, 301-02 (5th Cir. 2020).  The moving party "need not negate the elements of the nonmovant's case." *Wallace v. Tex. Tech Univ*., 80 F.3d 1042, 1047 (5th Cir. 1996) (emphasis in original); *see also Stewart v. Metro. Lloyds Ins. Co. of Tex*., No. H- 19-5008, 2020 WL 3452258, at \*3 (S.D. Tex. June 24, 2020).

Once the movant meets its burden of showing no genuine dispute of material fact exists, the burden shifts to the non-movant to set forth affirmative evidence and "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). To meet this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the non-movant must provide significant probative evidence that would enable a jury to return a verdict in the non-movant's favor.[1] *Anderson*, 477 U.S. at 256-57.  As discussed below, Trader Joe's is entitled to summary judgment on all of Ayala's claims.

## IV.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Trader Joe's terminated Ayala's employment for dishonesty after discovering that Ayala lied during his Crew Member Wellness Check ("Wellness Check"), thereby potentially exposing Trader Joe's Crew Members[2] and customers to COVID-19.  Among other safety-related measures, on or about April 13, 2020, Trader Joe's implemented Wellness Checks to protect its Crew Members and customers from the risk of contracting COVID-19.  One of the questions asked to

---

[1] Evidence presented in a summary judgment proceeding must be of the same quality and admissibility as would be admissible in a conventional trial.  *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 192 (5th Cir. 1991). Unsubstantiated opinions, speculation, and subjective beliefs are insufficient to defeat a properly supported summary judgment motion. *Jones v. La. Dep't of Health & Hosps*., 471 F. App'x 344, 346 (5th Cir. 2012).

[2] Most Trader Joe's stores, including Store #427, are staffed by a "Captain" (store manager), several "Mates" (assistant managers), and "Crew" (hourly employees).

2

employees as part of the Wellness Check was "[a]re you awaiting results for a COVID-19 test?" Ayala took a COVID-19 test on April 27, 2020, because he lived with someone who tested positive for COVID-19. Ayala was asked the Wellness Check questions during his shifts on April 29 and April 30, 2020, answering "no" to all the questions. Several hours into his April 30, 2020 shift, however, Ayala confessed to Captain Dustin Fuller ("Fuller") that he had taken a COVID-19 test on April 27, 2020. Fuller immediately sent Ayala home. After investigating the matter, Trader Joe's determined that Ayala's answers in response to the Wellness Checks were repeatedly inaccurate. Accordingly, Trader Joe's terminated Ayala's employment for dishonesty.

Despite the legitimate reason for the decision to terminate his employment, Ayala nevertheless alleges that Trader Joe's interfered with his right to FMLA leave and retaliated against him for exercising his rights under the FMLA. Ayala's testimony, however, shows that his claims are based on nothing more than rank speculation and his subjective beliefs about the reason Trader Joe's terminated his employment. Indeed, Ayala himself does not believe he was terminated because he needed to use FMLA leave. Ayala testified that he believes he was terminated because he was getting paid more than other employees in his position. As established below, summary judgment is proper because Ayala cannot establish any of his claims, as a matter of law.

## V.    STATEMENT OF FACTS

### A.    Ayala's Employment with Trader Joe's.

Ayala began his employment with Trader Joe's on February 17, 2000, as Crew in Trader Joe's Menlo Park, California location. Ex. A, Jose Ayala Deposition at 61:1-3. For the next nine years, Ayala transferred between Trader Joe's locations in California with two breaks in-between. *Id.* at 61:1-72:1. On October 8, 2019, Ayala transferred to Store #427 on Voss Road in Houston, Texas as Crew.

**B.     Trader Joe's Implemented Crew Member Wellness Checks to Mitigate the Risk of COVID-19 to its Crew Members and Customers.**

At the onset of the COVID-19 pandemic, Trader Joe's implemented a variety COVID-19 protocols to maintain the health and safety of its Crew Members and customers. Ex. B, COVID-19 Infection Prevention Safety Notebook Appendix.  Trader Joe's communicated these protocols through its Captains and Mates to its Crew during daily store meetings and to its customers through store signs.  Ex. C, Declaration of Dustin Fuller ¶ 7. On March 2, 2020, Trader Joe's proactively amended its leave policy to provide an additional ten paid days off for COVID-19 related leave.[3] Beginning in April 2020, Trader Joe's implemented Wellness Checks on a daily basis, wherein Crew Members would answer a series of precautionary health questions in an attempt to protect its Crew and customers from the risk of contracting COVID-19. Ex. D, Declaration of Liz Hancock ¶ 4.  At the beginning of every shift, the Captain or a Mate would speak with each Crew Member to ask the following series of questions:

> Are you experiencing any of the following symptoms?
> - Fever
> - Cough
> - Shortness of Breath
> - Sore Throat
> - Diarrhea
> - Lack of sense of smell or taste
>
> Do you live with anyone who has tested positive for COVID -19 in the past 14 days or who is currently awaiting results for COVID -19?
>
> Are you awaiting results for a COVID-19 test?

Ex. E, Crew Member Wellness Check.  If a Crew Member answered yes to any of the questions, they were sent home. Ex. D, Hancock Decl. ¶ 4; Ex. C Fuller Decl. ¶ 8.  If a Crew Member

---

[3] The Families First Coronavirus Response Act ("FFCRA") provisions were effective on April 1, 2020, and applied to leave taken between April 1, 2020, and December 31, 2020.  Pub. L. No. 116-127 (Mar. 18, 2020).  Trader Joe's was not covered by FFCRA because it employs more than five hundred employees.

4

answered no to all the questions, they were cleared to work, and the Captain or Mate who performed the Wellness Check initialed the attendance log next to the Crew Member's name. Ex. C, Fuller Decl. ¶ 8. The Wellness Check questions were asked of each Crew Member individually, in a private location. *Id.* Generally, the Wellness Check questions were asked verbally. *Id.* However, on some occasions, the Captain or a Mate would hand a Crew Member the list of questions to review and wait for a response. *Id.* While the list of symptoms included in the Wellness Check evolved to align with CDC guidance, the substance of the other Wellness Check questions remained the same. *Id.*

### C.    Ayala Took a COVID-19 Test After Close Contact Exposure to Someone with COVID-19 and Returned to Work in Violation of the Wellness Check.

On April 27, 2020, Ayala took a COVID-19 test because he lived with someone who tested positive for COVID-19. Ex. F, Jose Ayala Statement. Two days later, on April 29, 2020, Ayala worked a full shift. Ex. G, Attendance Log. Mate Jorge Castillo ("Castillo") was the supervisor during Ayala's shift. *Id.*; Ex. H, Declaration of Jorge Castillo ¶ 5. Castillo pulled Ayala aside and verbally asked him the Wellness Check questions, including "[d]o you live with anyone who has tested positive for COVID-19 . . ." and "[a]re you awaiting results for COVID-19." *Id.* Ayala answered no to all the Wellness Check questions. *Id.* Consequently, Castillo cleared Ayala to work and initialed the attendance log next to Ayala's name. *Id.*

Ayala worked again the next day, April 30, 2020. Ex. G, Attendance Log. Mate Dawn Langdon ("Langdon") was the supervisor during Ayala's shift. *Id.;* Ex. I, Declaration of Dawn Langdon ¶ 5. When Langdon began making her rounds to perform the Wellness Checks, she noticed that Ayala had clocked in early and was already on the sales floor working in the meat section. *Id.* Langdon reviewed the attendance log and discovered that Ayala had not been asked the Wellness Check questions. *Id.* Since Ayala was already on the sales floor, Langdon handed

5

Ayala the Wellness Check questions to read.  *Id.*  Ayala answered no to all the Wellness Check questions. *Id.*  Consequently, Langdon cleared Ayala to work and initialed the attendance log next to Ayala's name.  *Id.*  A few hours later, Langdon asked Ayala to come into the office to review and acknowledge the COVID-19 Infection Prevention Safety Notebook appendix ("Appendix").  *Id.* ¶ 6.  The content of the Appendix had previously been shared with all Trader Joe's Crew during store meetings and was available via www.mytraderjoes.com. Trader Joe's nonetheless wanted to provide Crew Members an opportunity to read the Appendix.  Included with the Appendix was the list of the Wellness Check questions. *Id.*   Ayala reviewed the Appendix and Wellness Check questions and signed the Crew Member Acknowledgment. *Id.*; Ex. B, COVID-19 Infection Prevention Safety Notebook Appendix.  Langdon was in the office while Ayala reviewed the Appendix and Wellness Check questions and signed the Crew Member Acknowledgment. Ex. I, Langdon Decl. ¶ 6.  Ayala did not have any questions, nor did he express any concerns regarding the information in the Appendix or Wellness Check questions to Langdon. *Id.*

> **D.** **Ayala Confessed to Captain Dustin Fuller that He Was Awaiting COVID-19 Test Results.**

A few hours after reviewing and acknowledging the Appendix and Wellness Check questions, Ayala confessed to Fuller that he took a COVID-19 test on April 27, 2020.  Ex. C, Fuller Decl. ¶ 9. After Ayala confessed, Fuller asked Ayala why he did not inform him earlier that he was awaiting COVID-19 test results as that was one of the questions in the Wellness Check. *Id.* Ayala responded that he didn't know why he did not inform him earlier and that he thought he was doing the right thing by not saying anything until he received the COVID-19 test results. *Id.*  Fuller immediately sent Ayala home. *Id.*

Fuller informed Regional Vice President Liz Hancock ("Hancock") of the situation.  Ex. C, Fuller Decl. ¶ 10.  Hancock began an investigation immediately and requested statements from

Dustin, Castillo, Langdon, and Ayala.  Ex. D, Hancock Decl. ¶ 6; Ex. J, Dustin Fuller Statement; Ex. K, Jorge Castillo Statement; Ex. L, Dawn Langdon Statement; and Ex. F, Jose Ayala Statement.

### E.       On May 1, 2020, Ayala Test Positive for COVID-19.

The following day, on May 1, 2020, Ayala informed Fuller that he tested positive for COVID-19.  Ex. M, Text Messages Between Dustin Fuller and Jose Ayala; Ex. C, Fuller Decl. ¶ 11.   This was the first positive COVID-19 case for the store and multiple Crew Members at the store expressed their concerns. *Id.*

### F.       Ayala's Employment is Terminated for Dishonesty.

After reviewing the statements, Hancock concluded that Ayala's answers in response to his Wellness Check questions were repeatedly inaccurate, and this inaccuracy had exposed other Crew and customers to increased risk of infection for COVID-19.  Ex. D, Hancock Decl.  ¶ 7. Hancock therefore decided to terminate Ayala's employment.  *Id.* ¶ 7; Ex. N, Termination Notice. On May 5, 2020, Fuller contacted Ayala by phone and informed him that Trader Joe's decided to terminate his employment for dishonesty. Ex. C, Fuller Decl. ¶ 14.

During the investigation, Hancock learned that Ayala's live-in partner, Dilrreng Sweii ("Sweii"), who worked as a Crew Member in Store #432 in Houston, Texas, also took a COVID-19 test on April 27, 2020, and worked on April 29 and April 30, 2020.  Ex. D, Hancock Decl.  ¶ 7. However, Sweii's Captain, Josh Hammond ("Hammond"), who asked Sweii the Wellness Check questions on both days, inadvertently, did not ask Sweii whether she lived with someone who was currently awaiting results for COVID -19 or if she was awaiting COVID-19 test results.  Ex. D, Hancock Decl.  ¶ 9; Ex. O, Josh Hammond Statement.  Consequently, Sweii's employment was not terminated, nor did she face any discipline.  Ex. A, Ayala Dep. 142:25-145:6; Ex. D, Hancock Decl.  ¶ 9.  Hammond was disciplined, given a written warning, for not asking Sweii all the

7

Wellness Check questions.  Ex. D, Hancock Decl.; Ex. P, Written Warning.

## VI.      ARGUMENT & AUTHORITIES

There are two distinct FMLA causes of action a plaintiff may bring. *Hunt v. Rapides Healthcare Sys.*, LLC, 277 F.3d 757, 769 (5th Cir. 2001).  First, an employee may state an "interference claim," alleging that the employer interfered with, restrained, or denied FMLA leave under § 2615(a)(1). *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999).  Second, an employee may state a "retaliation claim," alleging that the employer retaliated against the employee for exercising his rights under § 2615(a)(2). *Id.* Ayala brings claims for both FMLA causes of action.  For the reasons explained below, Trader Joe's is entitled to summary judgment on both of Ayala's claims.

### A.      Ayala's FMLA Interference Claim Fails as a Matter of Law.

An employee claiming interference with his FMLA rights must prove his employer interfered with, restrained, or denied his exercise of FMLA right and that he was prejudiced as a result.  *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017).  A *prima facie* case of interference requires proof of five elements: that the (1) employee was an eligible for leave under the FMLA; (2) employer was subject to the requirements of the FMLA; (3) employee was entitled to FMLA leave; (4) the employee gave proper notice to his employer of his intention to take FMLA leave; and (5) his employer denied his benefits to which he was entitled under the FMLA.  *DeVoss v. Sw. Airlines Co.*, Civ. Action No. 3:16-CV-2277-D, 2017 WL 5256806 at *3 (N.D. Tex. Nov. 13, 2017)(*aff'd* 903 F.3d 487 (5th Cir. 2018); *Tatum v. So. Co. Servs. Inc.*, 930 F.3d 709, 713 (5th Cir. 2019).  "'[E]ven if the plaintiff makes out a prima facie case, [he] may not overcome a motion for summary judgment if the employer articulates a legitimate non-discriminatory reason for the employment action at issue.'" *DeVoss*, 2017 WL 5256806 at *3.  Once the employer articulates a legitimate, nondiscriminatory reason for the employment action at issue, the burden returns to the

8

employee to create material fact issue that the employer's proffered reason is pretextual. *See id*. at *6.

Here, Ayala was not entitled to take FMLA leave, nor did he give Trader Joe's proper notice of his intention to take FMLA leave.  Further, Trader Joe's has articulated a legitimate, nondiscriminatory, and non-retaliatory reason for Ayala's termination, and Ayala has no evidence of pretext.  *See infra* Section VI.2-3.

### 1. Ayala was not entitled to FMLA leave.

The FMLA provides that "an eligible employee shall be entitled to…leave…for one or more of the following ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) (2002).  A "serious health condition," is an illness, injury, impairment, or physical condition that involves (a) inpatient care or (b) continuing treatment by a health care provider. 29 C.F.R. § 825.114(a).

Here, Ayala has no evidence that he suffered from a serious health condition, nor did he provide Trader Joe's with sufficient information to determine that he a suffered a serious health condition.  On the contrary, on May 3 and May 4, 2020, Ayala told Fuller that he was doing well and felt fine. Ex. M, Text Messages Between Dustin Fuller and Jose Ayala. And, in a statement to Hancock, Ayala stated that he had yet to experience any symptoms.  Ex. F, Jose Ayala Statement. For this reason alone, Ayala cannot make a *prima facie* case of FMLA Interference as a matter of law.

### 2. There is no evidence Ayala gave proper notice of his intent to take FMLA leave.

To be entitled to FMLA leave, an eligible employee must give his employer notice of his intention to take leave.  29 U.S.C. § 2612(e)(1).  When the need for leave is foreseeable, that notice must be provided at least 30 days before the FMLA leave is set to begin.  29 CFR § 825.302(a).

9

On the other hand, when 30 days' notice is impracticable, eligible employees must provide notice as soon as practicable.  29 C.F.R. § 825.303(a).  "In all instances, 'an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave…'" *Acker*, 853 F.3d at 788.  A general sick notice will not suffice.  *See* 29 C.F.R. § 825.303(b); *McElroy v. PHM Corp.*, 622 F. App'x 388, 389, 392 (5th Cir. 2015) (request to leave work early to seek unspecified treatment not a FMLA request); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 302 (5th Cir. 1999); *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 978, 980 (5th Cir. 1998). 29 C.F.R. § 825.303(b).  To put his employer on notice of his intention to FMLA leave, the "employee shall provide sufficient information for [his] employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b).  While the rule is not formulaic, an "employer is not required to be clairvoyant" regarding an employee's intention to use FMLA leave. *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998).

Here, there is no dispute that Ayala never requested FMLA leave for COVID-19, let alone followed Trader Joe's usual and customary notice and procedural requirements for requesting leave. Ex. A, Ayala Dep. 142:22-24. Ex. Q, Trader Joe's FMLA Leave Notice Requirements.  As Ayala is well aware, in order to request leave, an employee must submit a leave request through Trader Joe's leave tracking system. Ex. Q, Trader Joe's FMLA Leave Notice Requirements; Ex. R, Ayala's 2020 Handbook Review Acknowledgment.

Ayala also failed to provide Trader Joe's proper notice of any intent to take FMLA leave. Ayala never submitted any notice at all, let alone a communication that provided sufficient information to appraise Trader Joe's that he was requesting FMLA leave for a serious health condition.  On May 1, 2020, Ayala sent Fuller a text message, stating "we just got the phone call about results and unfortunately it came back positive." Ex. M, Text Messages Between Dustin

10

Fuller and Jose Ayala.  The text message did not provide Trader Joe's with enough information for it to conclude that Ayala was requesting FMLA leave to tend to any serious health condition. While an employee need not expressly mention the FMLA when notifying his employer of the need to take a leave of absence, he must at the very least provide his employer with enough information to put the employer on notice that he needs FMLA-qualifying leave.  9 C.F.R. § 825.302(c).  Ayala failed to do.  Ayala's text message does not indicate that he was going or had gone to a hospital or a medical provider for treatment of a serious health condition.  And while Trader Joe's policy automatically provided Ayala with time off for COVID-19, Ayala's text message provided no information that would have apprised Trader Joe's that he was in need of or requesting FMLA-qualifying leave.  Where, as here, employees provide defective notice of their intent to take FMLA leave, their FMLA interference claims must be dismissed. *See, e.g.*, *Acker*, 853 F.3d at 790, 792 (affirming dismissal of FMLA retaliation claim where employee failed to provide employer proper notice of intent to take qualifying leave).

Finally, even assuming, *arguendo*, that Ayala's COVID-19-related time off was protected FMLA leave, the federal regulations are clear that an employee's FMLA leave does not provide immunity from policy-based terminations.  On the contrary, the regulations clearly state that "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.  29 C.F.R. § 825.216.  In other words, although the FMLA prohibits the termination of an employee *because* that employee exercised his rights under the FMLA, the statute does not shield employees from termination if the reason is unrelated to the employee's exercise of rights under the FMLA. *See, e.g., Meinelt v. P.F. Changs China Bistro, Inc.*, 787 F. Supp. 2d 643, 654 (S.D. Tex. 2011) ("If the plaintiff would have been terminated regardless of his request for leave, his interference claim

11

cannot prevail."); *Jarjoura v. Ericsson, Inc.*, 266 F.Supp.2d 519, 533 (N.D. Tex. 2003); *Grubb v. Southwest Airlines*, 296 F. App'x 383, 391 (5th Cir. 2008).   The undisputed evidence overwhelmingly demonstrates that Ayala's employment was terminated for dishonesty after he repeatedly lied about awaiting the results of a COVID-19 test. *See supra* Section V.C – V.F. Accordingly, Ayala cannot maintain his FMLA Interferance claim, and his claim must be dismissed as a matter of law.

> **B.  Trader Joe's is entitled to summary judgment on Ayala's FMLA retaliation claim.**

Ayala also brings a cause of action for FMLA retaliation, alleging that Trader Joe's retaliated against him for exercising his FMLA rights when it terminated his employment.  The Fifth Circuit applies the *McDonnell Douglas* framework to analyze FMLA retaliation claims. *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006); *Hunt*, 277 F.3d at 768. To establish a *prima facie* case, the plaintiff must show that: (1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) either that he was treated less favorably than an employee who had not requested FMLA leave or that the adverse decision was made because he took FMLA leave. *Id.* If Ayala succeeds, the burden shifts to Trader Joe's to articulate a legitimate, non-retaliatory reason for the employment action. *Id.* Ayala must then show that this reason is a pretext for retaliation. *Id.*

> **1.  Ayala cannot establish a *prima facie* case of FMLA retaliation.**

Ayala cannot establish a *prima facie* case of FMLA retaliation because there is no evidence he engaged in activity protected under the FMLA or that he was treated less favorably than an employee who did not request FMLA leave, and because he cannot demonstrate a causal connection between his leave and his termination.

12

a.      **Ayala did not engage in activity protected under the FMLA.**

To engage in protected activity under the FMLA, an employee must request FMLA leave. *Lanier v. University of Texas Southwestern Medical Center*, 527 Fed. Appx. 312, 317 (2013) (Granting employer summary judgment because "[employee] did not make a proper request for FMLA leave …. Accordingly, she did not make out a prima facie case as to this first theory of retaliation."). To make a request for FMLA leave, an employee "must give notice that is sufficient to reasonably apprise [his] employer that [his] request to take time off could fall under the FMLA." *Id.* at 316. While the rule is not formulaic, an "employer is not required to be clairvoyant" regarding an employee's intention to use FMLA leave. *Satterfield v. Wal-Mart Stores*, Inc., 135 F.3d 973, 980 (5th Cir. 1998).

As discussed above, it is undisputed that Ayala never requested FMLA leave. Ayala specifically testified as follows:

> Q: And did you ever put in a request for – for medical time off related to your COVID diagnosis?
>
> A: No.

Ex. A, Ayala Dep. 142:22-24. Further, Ayala failed to provide any information to appraise Trader Joe's that he was requesting FMLA leave for a serious health condition. For this reason alone, Ayala cannot make a *prima facie* FMLA retaliation case as a matter of law. *See Lanier*, 527 Fed. Appx. at 317.

b.      **Ayala lacks evidence of a causal connection between any protected activity and his termination.**

To establish a *prima facie* case of FMLA retaliation, Ayala will need to show that he was treated less favorably than other employees who had not requested leave under the FMLA, or that the adverse decision was made because he took FMLA leave. *See Mauder v. Metro. Transit Authority of Harris County, Texas*, 446 F.3d 574, 583 (5th Cir. 2006). To establish this element,

13

Ayala must demonstrate a causal link between his FMLA leave and his termination. *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 768 (5th Cir. 2001). Ayala cannot establish a *prima facie* case of FMLA retaliation because there is no evidence that he was treated less favorably than employees who did not request FMLA leave or that he was terminated to prevent him from taking FMLA leave.

In his complaint and deposition testimony, Ayala does not, and cannot, identify an employee who did not request leave under the FMLA who was treated more favorably under similar circumstances. Indeed, Ayala testified that he was not aware of any other employee whom he believed was treated better than he was. Ex. A, Ayala Dep. 147:5-19. Ayala has not identified any such individual because there is no comparable employee who had not requested FMLA leave who was treated better under similar circumstances.

Nor can Ayala establish that Trader Joe's terminated his employment *because of* his potential request for leave. Instead, the undisputed evidence shows that Trader Joe's terminated Ayala's employment not because he was potentially going to request leave, but because he lied during multiple Wellness Checks, potentially exposing Trader Joe's Crew and customers to COVID-19. *See supra* Section V.C – V.F.

Further, not only does Ayala lack any evidence that he was terminated to prevent him from taking FMLA leave, Ayala himself testified that he does not believe he was terminated because he needed to use FMLA leave for his COVID-19 infection. Ex. A, Ayala Dep. 147:20-22 ("Q: Do you believe that you were terminated because you needed the time off for COVID-19? A: No."). Instead, Ayala testified that he believed he was terminated because he was getting paid more than other employees in his position.

> Q: Why do you believe that you were terminated?
> A: Because I was getting paid the most, and I come from, I guess, a

background of management.
Q: Any other reason?
A: No. That's - - that's all.
Q: Okay. So just want to make sure I understand you. You think they wanted to terminate you because you were being paid higher than other people at the store for their - - for the position you held?
A: I believe so.
Q. Okay. Is there any other reason that you believe the company wanted to terminate you?
A: No. Not that I know.

*Id.* 147:23-148:10. Because Trader Joe's did not terminate Ayala in retaliation for potentially requesting FMLA leave, his FMLA claim fails as a matter of law.

### 2. Trader Joe's terminated Ayala's employment for a legitimate, non-discriminatory, non-retaliatory reason.

Even if Ayala can establish his *prima facie* case of retaliation under the FMLA—which he cannot—the undisputed evidence overwhelmingly demonstrates that Ayala's employment was terminated for dishonesty. An employee's false statements are a legitimate reason to terminate employment. *Mayberry v. Mundy Cont. Maint., Inc.*, No. CIV.A. H-03-5221, 2005 WL 1965956, at *6 (S.D. Tex. Aug. 16, 2005), aff'd, 197 F. App'x 314 (5th Cir. 2006) (employee's false statements provided legitimate reason or termination of employment). The decision maker, Hancock, chose to terminate Ayala's employment because his answers in response to his Wellness Check questions were repeatedly false, and this misrepresentation had resulted in the potential exposure of other Crew and customers to infection from COVID-19. *See McCray v. DPC Indus., Inc.,* 942 F. Supp. 288, 296 (E.D. Tex. 1996) (employee's violation of safety rules posed a threat to both him and his co-workers and was legitimate, non-discriminatory reason for his reprimand and discharge); *Spencer v. Schmidt Elec.* Co., 576 Fed. Appx. 442, 451 (5th Cir. 2014) (finding that an employee's violation of a zero-tolerance safety policy was a legitimate, nondiscriminatory reason for termination). *see also supra* Section V.D - V.F.

15

### 3.    Ayala has no evidence that Trader Joe's stated reason for terminating his employment was a pretext for FMLA retaliation.

Even assuming, *arguendo*, that Ayala can establish a *prima facie* case of FMLA retaliation, Trader Joe's is nevertheless entitled to summary judgment because it has articulated a legitimate, nondiscriminatory, and non-retaliatory reason for Ayala's termination, and Ayala has no evidence of pretext.  To show that Trader Joe's reasons for termination were a pretext for FMLA, Ayala must prove that Trader Joe's reasons are false or motivated by his FMLA leave. *See Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (explaining that a Plaintiff "must substantiate her claim of pretext through evidence . . . that discrimination lay at the heart of the employer's decision").

Apart from rank speculation, Ayala has no evidence that his potential use of FMLA leave was a motiving factor in Trader Joe's decision to terminate his employment.  According to his Original Complaint, Ayala believes Trader Joe's retaliated against him because he was terminated three days after he informed Trader Joe's he tested positive for COVID-19.  Dkt. 1 ¶ 34. But "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Wiseman v. New Breed Logistics, Inc.*, 72 F. Supp. 3d 672, 678 (N.D. Miss. 2014) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir.2000)); *see also Coleman v. FFE Transp. Servs., Inc.*, 2013 WL 1914932, at *6 (N.D. Tex. May 9, 2013) ("[K]nowledge of the FMLA leave by the decision maker is [usually] required to establish a causal connection...."); *Strong v. Univ. Health Care Sys.*, 482 F.3d 802, 818 (5th Cir. 2007) ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.  Such a rule would unnecessarily tie the hands of employers.").  Here, there is no evidence that the decision-maker was under the impression that

16

Ayala intended to take or had taken FMLA for a COVID-19 infection or any other reason. Hancock decided to terminate Ayala's employment after reviewing statements from Ayala, Fuller, Castillo, and Langdon, and determining Ayala's answers in response to his Wellness Check questions were repeatedly false. *See supra* Section V.D – V.F.

Ayala has no evidence that any other factor motivated Trader Joe's decision, as his subjective beliefs of retaliation are entirely insufficient to support his claims. *See Bauer v. Albermarle Corp.*, 169 F. 3d 962, 967 (5th Cir. 1999) (subjective beliefs are insufficient evidence of unlawful conduct by an employer). Courts have repeatedly noted that "the mere fact that some adverse employment action is taken after an employee engages in some protected activity will not always be enough [to demonstrate a retaliatory animus]." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004). Not only is there no evidence to support Ayala's retaliation allegations, but the undisputed evidence actually shows the opposite, as other Crew at Store #427 have taken leave for a COVID-19 infection and have not been disciplined or terminated. Ex. C, Fuller Decl. ¶ 15. Ayala himself concedes that his live-in partner, Sweii, who works as a Crew Member in Store #432 is still employed with Trader Joe's even after she informed them that she tested positive for COVID-19. Ex. A, Ayala Dep. 142:25-145:6.

Ayala claims that Trader Joe's stated reason for his termination is false, and therefore pretextual, because he was not asked the Wellness Check questions and therefore was not dishonest. Specifically, Ayala alleges he was never asked whether he was awaiting COVID-19 test results and that he first learned that employees should stay home if they were awaiting COVID-19 test results on April 30, 2020, after he reviewed and acknowledged the Appendix. Dkt. 1 ¶ 22;

Ex. A, Ayala Dep. 141:3-18.[4] But Ayala's argument that Hancock relied on inaccurate information in making the decision to terminate his employment is irrelevant because the evidence is undisputed that Hancock believed Ayala answered the questions dishonestly in making the decision to terminate his employment. Ayala cannot show pretext by merely disputing that Hancock made an incorrect assessment because the issue is not whether Trader Joe's made a correct or good decision, but whether instead the decision was motivated by FMLA retaliation. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue."); *De Anda v. St. Joseph's Hosp.*, 671 F.2d 850, 854 n. 6 (5th Cir. 1982) ("Whether [Defendant] was wrong in its determination ... is irrelevant, as long as its belief, though erroneous, was the basis for the termination."). To be sure, Trader Joe's disputes Ayala's contention that he was never asked the Wellness Check questions on the days in question. Ex. K, Jose Castillo Statement; Ex. L, Dawn Langdon Statement. But that issue is irrelevant because Ayala has absolutely no evidence that Trader Joe's acted with an improper motive in making the decision to terminate his employment.

In light of the undisputed evidence and Ayala's admissions, Ayala cannot demonstrate that Trader Joe's actions were pretext for retaliation. As such, Ayala's FMLA retaliation claim fails as a matter of law.

---

[4] Even assuming *arguendo* that Ayala first learned he should stay home if he was awaiting COVID-19 test results after he reviewed the Appendix, Ayala waited hours after reviewing and acknowledging the Appendix to confess to Fuller that he took a COVID-19 test, thereby exposing Crew and customer to COVID-19. Langdon Decl. ¶ 5-7.

## VII.   CONCLUSION

There are no genuine issues of fact which would preclude summary judgment in Trader Joe's favor.  Ayala cannot establish a *prima facie* case of FMLA Interferance or FMLA retaliation, nor can he demonstrate that Trader Joe's legitimate, non-discriminatory reason for terminating his employment was pretextual.  Accordingly, summary judgment for Trader Joe's is warranted in this case.  Trader Joe's respectfully requests that the Court grant its Motion for Summary Judgment, that Plaintiff take nothing, and that Trader Joe's be awarded such other and further relief to which it is justly entitled.

Dated: June 8, 2022

Respectfully submitted,

*Of Counsel:*

/s/ Kelley Edwards
Kelley Edwards (*Attorney-in-Charge*)
State Bar No. 24041775
S.D. Tex. ID No. 560755

Analiza Rodriguez
State Bar No. 24110290
S.D. Tex. ID No. 24110290
anrodriguez@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
713.652.4736 (Telephone)
713.583.0023 (Facsimile)

kedwards@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
713.951.9400 (Telephone)
713.951.9212 (Facsimile)

**ATTORNEYS FOR DEFENDANT
TRADER JOE'S COMPANY**

19

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2022, a copy of the foregoing document has been electronically filed with the Court, and served on the following counsel of record by CM/ECF:

/s/ Kelley Edwards
Kelley Edwards

4892-8717-1363.5 / 071820-1094

20