# Exhibit C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JOSE AYALA,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-00408** |
| | § | |
| **TRADER JOE'S COMPANY,** | § | |
| | § | |
| **DEFENDANT.** | § | |

<u>DECLARATION OF DUSTIN FULLER</u>

1.      My name is Dustin Fuller. I am over 21 years of age. I am of sound mind, capable of making this Declaration, and personally acquainted with the facts set forth herein. All statements made in this Declaration are true and correct and are based upon my personal knowledge.

2.      I am currently employed at Trader Joe's as a Captain at Store 427 on Voss Road in Houston, Texas, and was Captain when Plaintiff Jose Ayala ("Ayala") worked at Store 427 as a Crew Member. I have been employed with Trader Joe's since approximately October 2006 and worked for Trader Joe's in Chicago, New York, and Texas. In 2007, I was promoted to Mate. In 2013, I was transferred as a Mate to the Trader Joe's Voss Road, Houston Texas location. In 2015, I was promoted to Captain. In my capacity as Captain, I am the most senior leader of the store and am responsible for ultimately overseeing all operations at the location. As Captain, I supervised Ayala from when he transferred to Store 427, on October 8, 2019, through approximately May 5, 2020, when his employment was terminated.

3.      Trader Joe's refers to its non-supervisory hourly employees as Crew Members. Trader Joe's gives the title of Mate to those who are part of the store's leadership and supervisory team

who support the Captain. Trader Joe's gives the title of the Captain to the senior leader of the store.

4.      I have received and reviewed Trader Joe's Crew Handbook numerous times during my employment and I am familiar with its contents, including the Discrimination and Non-Harassment policy.

5.      Trader Joe's requires all Crew Members, including Captains, Mates, and Crew in store and in the corporate offices, to undergo harassment and discrimination prevention training.

6.      As Captain, I have received training from Trader Joe's, including regarding discrimination, harassment, and retaliation. I have attended Trader Joe's HR Management Trainings on discrimination and harassment.

7.      Beginning in March 2020, Trader Joe's implemented COVID-19 protocols to maintain the health and safety of its Crew Members and customers. Trader Joe's communicated these protocols through its Captains and Mates to its Crew Members during daily store meetings and to its customers through store signs.

8.      Beginning in April 2020, Trader Joe's implemented Crew Member Wellness Checks ("Wellness Checks') on a daily basis, wherein Crew Members would answer a series of precautionary health questions. If a Crew Member answered yes to any of the questions, they were sent home. If a Crew Member answered no to all the questions, they were cleared to work, and the Captain or Mate who performed the Wellness Check initialed the attendance log next to the Crew Member's name. The Wellness Check questions were asked to each Crew Member individually, in a private location. Generally, the Wellness Check questions were asked verbally. However, on some occasions, the Captain or a Mate would hand a Crew Member the list of

2

questions to review. While the list of symptoms included in the Wellness Check evolved to align with CDC guidance, the substance of the other Wellness Check questions remained the same.

9. On April 30, 2020, Ayala approached me and informed me that he took a COVID-19 test on April 27, 2020. I asked Ayala why he didn't let me know earlier that he was awaiting COVID-19 test results since that is one of the questions in the Wellness Check. Ayala responded that he didn't know why he did not tell me earlier and that he thought he was doing the right thing by not saying anything until he received the COVID-19 test results. I immediately sent Ayala home.

10. I informed Regional Vice President Liz Hancock ("Hancock") of the situation. Hancock requested that I draft a statement and request statements from Ayala and Mates with relevant information. I requested statements from Mate Jorge Castillo, Mate Dawn Langdon, and Mate Madilyn Brumley.

11. On May 1, 2020, I contacted Ayala by text message to see how he was doing. Ayala informed me that he and his partner Dilrreng Sweii tested positive for COVID-19.

12. That night I stayed overnight with a a third-party cleaning company to clean and disinfect the store. This was the first positive COVID-19 case for the store and multiple employees at the store expressed their concerns.

13. I contacted Ayala on May 3 and May 4, 2020 to see how he was doing. On May 4, 2020, I also informed Ayala that Hancock had requested a statement from him, which he emailed to me, and I forwarded to Hancock.

14. On May 5, 2020, Hancock made the decision to terminate Ayala's employment for dishonesty. I contacted Ayala by phone and informed him that Trader Joe's had decided to terminate his employment for dishonesty. Ayala's termination increased Crew Member's confidence that Trader Joe's was taking the COVID-19 pandemic seriously.

3

15.    Since Ayala' termination, other Crew Members at Store 427 have taken leave for a COVID-19 infection and have not been disciplined or terminated.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____                    Date _6/7/22_____
Dustin Fuller

4